The next case for argument is 17-2263 in Re Lin He's going to let the other side get it with a nice force Okay, we're ready to proceed Good morning, your honors. May it please the court. This case presents an interesting issue of how the patent office applies the making a dressmaker's dummy on which they can fit as pertinent prior art. In other words, tailoring the prior art in such a way that it fits into a category for pertinent. So pertinence, you're looking for the field of the prior art. In this case, the field is curtain rod finials that light up. And the prior art was a lighted finial that had an electrical cord that went down and plugged into the wall. And the first reference, the Chen reference, which we don't dispute is pertinent art, has LED ends on a curtain rod with an electrical cord plugged into the wall. The back of a bicycle. And then also combined with a rather complex patent seems to be focused on I'm talking about Dean and Ducharme. Dean and Ducharme, excuse me. The Ducharme reference, which is a little confusing reference, seems to relate to theater lighting. It discloses methods of combining light of different spectra in order to achieve a predetermined lighting condition. So to get from Chen, which is unquestionably the prior art, we don't dispute it, this sharp curtain rod with lighted ends plugged into the wall, the patent examiner looked to the Dean reference, the bicycle safety light, and defined the the problem that the inventors of the application were addressing. The Supreme Court made very clear at KSR is that we're not supposed to just be looking to the problem that the inventors sought to solve. That's one of the things they criticized us for. They thought we did that too often. And that what they said was there could be any number of problems that would be solved by the things that the patent actually discloses and we're not supposed to be limited to just what the patentee was trying to solve. Well, KSR was talking about the first step of the gram test, the scoping content to the prior art. It was not talking about analogous or pertinent art, which was not a subject that was raised in the case, nor was it discussed by the court in KSR. And I think that gets to the second half of this appeal, which is on the issue of obviousness and the motivation to combine. But pertinence is in the statute. It's right there. It has to be pertinent art. A test has been devised for how to apply and how to decide what is. But the court analyzed it under that criteria and they said it was pertinent, the prior art was pertinent to the problem that Lynn was looking to solve, right? And they said, for instance, with respect to one of the references, that the inventor was trying to resolve the need for cordless power for an illuminated rod and Dean provided the answer to that question. Why is that not pertinent? Because the problem cannot be so broadly defined. Just as in clay, where this court decided, what is the problem with this tank that's supposed to have oil in it? And below the little hole at the bottom of the tank is the space and they wanted to fill that up with something to get all the oil out of it. So they put some gel down there and the prior art was sedans, which was a gel that would be injected into an underground formation where they were trying to get oil. It would fill up spaces in order to get the oil out. So that problem sounds identical. But the court here said no. Those are very different situations. If you're trying to get the last drops of oil out of a tank, that isn't the same thing as trying to get oil out of the ground. If you're trying to light curtain rods with LEDs in a way that won't exhaust their batteries in a short amount of time, you wouldn't look to a bicycle safety light that would never have thought about using an electrical cord because it couldn't. But the fact that it wouldn't have thought about using an electrical cord doesn't change the fact that it had a way to provide light without an electrical cord. And this is exactly what I'm getting at. The tendency of examiners is to create the motivation and then use that motivation as pertinent to the problem by tailoring it. But that was my whole point before about what the Supreme Court was saying in KSR is that you don't have to be trying to solve the problem in a bicycle light, but they were able to establish that you could have a lighted fixture on the bicycle without a cord. Why isn't that exactly what the patent is talking about? Well, because you're looking at the solution rather than looking at the problem. And your case says that you're looking for prior art that would have logically commended itself to the inventor in trying to reach the solution. So the question is, would a person trying to make a lighted finial look to bicycle safety lights to solve the problem? And I think as in clay, where a person in the oil industry... Is your problem that this is a bicycle as opposed to, say, a household appliance other than a curtain rod? Suppose some form of lamp that you wanted to have freestanding away from electrical outlets that had an LED fixture at the top of a pole where the batteries were lighting the pole. That would be Well, not necessarily. Why not? That sounds awfully close to me. The issue is that these curtain rods are high up. And so they're hard to turn off. My pole goes high up. Well, but usually you have a switch on a lamp, a pole, to turn the light off. But the curtain rods are hard to get to, to turn off. And the So you would define the scope of analogous art to be only curtain rods? I mean, how would you define the limits? Well, we're not in the field of endeavor, because I believe that has been conceded. We're in the problem faced by the inventor. And the problem, as it relates to the One was to use batteries. And then the other was to have an automatic light-sensitive switch, which would turn it off during daytime so you're not running the batteries down. Well, what if I wanted... So it's got to be high? Like, what if I wanted LED lights around my floorboard? I could have easily plugged them in, but I don't want plugs. So are you saying that wouldn't be pertinent? Because not high up? I'm saying that it wouldn't address the problem of being out of the access of the consumer and also the prior art using cords that drape down from the curtain and clash with the decor or are dangerous. That was what the prior art talked about. So you, in getting rid of those things, you're looking for a solution that would not logically commend itself to a bicycle safety light, which didn't really solve the problem of the short battery life anyway, because that was an old patent using incandescent bulbs and had a switch which the bicycle rider would just turn on and off, getting on or off the bicycle. But here you have these finials that are located up high. They're hard to reach. The LED low power consumption helps a lot. But then you add to that an automatic light sensitive switch, which is found in the Ducharme restaurants, but that's not the pertinence issue that comes up with Ducharme. They used Ducharme to find that automatic light sensitive switch, which is in the independent claims, but they found something else in the dependent claims with which to combine Ducharme, which was a different light color. So they said, well, we're going to take the Chen shower curtain LED light with a cord. We're going to combine it with Dean because it has batteries and the cartridge issue is a separate issue about the obviousness analysis. But on pertinence, we're going to combine it with Dean and then we're going to bring in Ducharme because Ducharme satisfies some dependent claims that say, one of the things you can do is you can change color with LEDs. And Ducharme was brought in saying, well, that's what Ducharme does. But that's not what Ducharme does. What Ducharme does is take different spectra of light, mix them in order to meet a target illumination. It uses a processor and a light sensor in order to accomplish that. So now your argument is not so much that Ducharme wouldn't have been pertinent if it did exactly what the board thought it did, but you're saying the board misunderstood Ducharme? I'm saying the board did misunderstand Ducharme. Now, what the prior art teaches is a factual finding, though. So we'd have to find that they were clearly erroneous with respect to what Ducharme taught. Well, there are two issues. One is the obviousness analysis, which I'll address in a moment. But the other is the pertinence analysis, where the board and the examiner and the patent office here do wrong is they define the problem that Ducharme was addressing, which was trying to mix different spectra of light in order to reach a target illumination in such a way that it reads on the pertinence issue of what is the problem that the inventors here are trying to address. And they say, well, Ducharme provides. They're providing LEDs that change color. Well, actually, that's not exactly the case. They're mixing LEDs of different spectra in order to reach a target illumination, but they're not providing the solution to the problem or addressing the problem that the inventors here were dealing with, which was in the dependent claim, having lights that would change color according to the users, not by mixing spectra, not by the use of a processor, and not by the other mechanisms. Those are the factual issues I think you're getting to, which in the obvious analysis, Ducharme, they cite to the processor and the light sensor as the mechanism by which you get to both the automatic light sensitive switch, but also the change of color. But that's way beyond what the claims here are even talking about. It doesn't read on the claims at all. The claims talk about an automatic light sensitive switch. I'm switching over from pertinence into the obviousness issue, hoping to answer your question. The automatic light sensitive switch of Ducharme is, or it isn't an automatic light sensitive switch, it's a processor. It takes data from a light sensor that says, okay, here are the wavelengths of light that I'm measuring, but I'm trying to get to this other lighting condition. I'm going to adjust the light that I cast from my light fixture, make it brighter, make it more red, make it more blue, and then try again. Through iterations of that process, that's how the Ducharme system reaches a target illumination. The idea being, if you're making a movie one day and you have a certain lighting condition, you want to be able to come back the next day and if the circumstances have changed, you can get the same lighting condition. So the processor is switching from one set of LED combinations to another? Right. But that makes it a switch, does it not? Well, it's a processor that takes data and changes... And switches. I would, in the briefs, we have given you a definition from an electronics dictionary, which is about what a switch is, and it says it cuts something off. So if I, well, okay. Well, no, I see what you're saying, and the patent office has said this as well, that the processor, sensor, and lighting fixture combination operates as a switch in the way that's claimed here. The way it's claimed here is that there is a switch between the battery and the light. That's the switch. You're well into the... Okay, I'm sorry. Thank you for letting me know. Good morning, Maine Police Court. Both Dean and Jucharam are analogous to the claimed invention here. The problems faced by the inventors were not unique to illuminated curtain rods. They're electrical problems, and an artisan would look to common electrical solutions like other lighting applications. The bike light in Dean would certainly logically commend itself to an inventor trying to solve the problem of providing a light without a cord. One would naturally look to lights where a cord was impracticable or undesirable, like a bike light in Dean where you couldn't be tethered to a cord. Similarly, the LED system in Jucharam would logically commend itself to an inventor who wanted to change colors. What's the outer boundary of pertinence? Well, I think the outer boundary of pertinence would be really looking to the logically commend itself test. Certainly, your Honor is right that in KSR, and this court has said in Wyers v. Masterlock, that you want to, in light of KSR, interpret the scope of analogous art broadly because familiar items can have purposes beyond their primary purpose. How broad can we go? At some point, it does seem like you're getting far afield. Well, I think maybe the limit is the cases like tennis and circuit check, where in tennis, a designer of a child's toy for water balloons wouldn't even really necessarily know that balloons are used in this surgical device. You wouldn't even think that you might have something like that there. Same for circuit check. It's so far afield from interface boards for circuits to think about rock carvings that one wouldn't even think, oh, there might be something there that would be helpful. So defining the exact outer boundary is difficult, but I think those cases illustrate about where the outer boundary is, where even though maybe the answer might be pertinent, you would never even think that that art, that that type of subject matter would have something useful for you. So what's the difference with this case? I mean, I'm looking for a definition of the outer boundary, too. You started off by talking about, well, you'd look for something electrical. Is that how you would define the outer boundary in a piece of prior art that discusses anything that's electrical? I think, well, so putting it to this case, probably the outer boundary for the light without the power cord, maybe electrical lighting, I think that would be the outer boundary. Maybe even household appliances and consumer goods, is that where you were going earlier? Well, I think that would even be inner than the outer boundary. I think lighting that's much more... Do you go even farther than that? So it's something that's used in a power plant somewhere or something like that you think is sufficiently analogous? I think, well, that might be too far afield. It would have to be something that you would think would be applicable in the household realm. So something, I think we gave the example of a nuclear submarine would not be something that would be useful to solve the problem in the household realm. Would it have to absolutely be in the household realm? I don't think it would necessarily have to be in a house. Maybe a consumer good would be helpful, but an electrical item that deals with lighting, where the invention is one that seems like it could be applicable easily to the household realm, to a consumer realm, that would seem to be the outer boundary. Between household and consumer, consumer in my mind is much, much broader than household. That's true. Bicycle would not come under... Is it your view that bicycle would come under the household realm? I think I meant to say consumer. So if I said, I think household is within the outer boundary, but consumer, I think consumer is a bike light, and that would certainly come into the case here. In terms of where the outer boundary is, I don't know that we need to get there here, because both of these references seem to be within the inner boundary. Do you view Ducharme as a consumer reference? That's probably on the borderline. Ducharme says that its lighting device, it can be used to make consumer goods more attractive. They give the examples of furniture. They give the examples of fruit and vegetables. They talk about a wide range of applications. They also talk about visual arts and talk about theater and things like that. But really, the design of a lighting component is a visual art, and the whole point of this curtain rod is to make something attractive. And you would want to, according to the inventors here, you would want to put these lighted bulbs on the end to make it more attractive. So the whole set of problems that are being discussed in Ducharme are the same type of problems and the same kind of applications. What's your response to your friend on the other side when he says that the board actually misunderstood what Ducharme was teaching? Well, first of all, I think the substantial evidence supports the board's findings here, and they are factual findings. But beyond that, Ducharme is very clear that it's about changing colors of lights. It has the ability, it has extra abilities than that. It can do a lot more things than that. It can adjust the color of light within white light to make it a little bit, you know, have a different spectrum. But it's explicit that when it's talking about colored lights, it refers to colored lights as not white. So there isn't really any way that the board misunderstood Ducharme. When it comes to the switch issue, it is maybe a fancier switch than just a circuit. But a processor is still a switch just because it can do more things than a very simple circuit doesn't mean that it's not a switch. And beyond that, again, that's a factual finding that the board is entitled to substantial evidence review on. But does the processor, though, in Ducharme really control the electrical power that's supplied? Well, I think the best place to look at that is Figure 2 of Ducharme, which is on Appendix 63. And that shows power coming into the processor and then the processor controlling the light source. And then the text of the specification as well supports that in, for example, Paragraph 32 on Appendix 89, where the switch is controlling the brightness based on the power that's coming in to the switch. So we've got both the purposes and the techniques for controlling the light being different between the patent and Ducharme. I mean, again, we're starting to get to the outer boundaries, aren't we? Well, let's go back to even some of the narrower parts of Ducharme. If you look at the specification here, they say that one of the problems in the prior art is to change lights, you have to put on these manual filters, and then you're limited to the color of the filter. If we want to just look at exactly the problem that is stated in the prior art reference, those are problems that Ducharme states. It criticizes, it says prior art is to change colors, it's filters, those are undesirable, you have to change them each time they get hot and they melt, and you can only have a color that is in the filter. So if you look even at the narrow sort of test for pertinence, is the exact problem in the prior art reference the same as the problem that is stated in the patent? Ducharme meets that test. So even if it's a somewhat different application, to the extent that we want to use the test that this court has, I think that is one way to meet the intervention logically commended self-test, which is the same problem with the same purpose. We have that expressly in the prior art reference in Ducharme and the specification here. On the obviousness case, it seems that once you get past the analogous art issue, the obviousness case is fairly fundamental, that using batteries rather than cords to power devices in this day and age would be obvious to an ordinary artisan, and that using a light-sensitive switch to adjust the brightness of lights would also be obvious in order to have greater control over the lights. Beyond that, unless the court has any more questions, we'll yield our time. Thank you. I do want to object to the patent office in this appeal here, changing what the PTAB defined as the pertinence of the Ducharme reference, which was changing color. In this appeal, they've changed that to controlling brightness, a new argument. I'm not saying that that's what's going on with Ducharme anyway. It uses LEDs, mixes the spectra, uses a constant voltage and multiple LED fixtures in order to achieve this target illumination. I don't think that you can call that sensor-processor fixture combination a switch in the way it's claimed here, which is a switch interposed between the battery and the light fixture. But I think what this case represents, and why it's a good case, is that it illustrates how the patent office tends to redefine things in terms of the solution. Your Honor, I think you're tending to go, which is to say, well, here are structures, here are solutions to the problem. But if you strip away the pertinence analysis and you just say, well, let's compare structures, you're getting to a 102 analysis and you're not really addressing whether the prior art is pertinent and would have logically commended it. Is there a difference between, with respect to a pertinence analysis, when you're talking about extremely complex technology versus fairly simple technology? Well, that was the next point I wanted to address, which is, where do you draw the lines? And I said, well, there are many sources of power, self-contained power, nuclear submarines, spaceships, watches. Are those pertinent art? It's a tendency, I think, of the patent office in this appeal here to conflate the field of the invention, the first part of the pertinence test, with the problem-solving. Well, this is consumer products. We can just say that everyone knows all that stuff, as in circuit check, where they said, well, it's just like keying a car. Everyone knows how to key a car, and so that makes it pertinent art. It isn't addressing the problem that the invention was seeking to solve. It's addressing this issue of, well, where do you draw the line? And here I think the line is not even closely drawn to consumer lighting products in the home, because they don't have the problem that the inventors were trying to confront, which were these finials that are high up and trying to get their electrical cords gone, but not let their batteries die out immediately. And your time is up. All right. Well, thank you, Your Honor. I appreciate it. Thank you. Thank you. The case is submitted.